# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 20-487V

| | |
|---|---|
| JENNIFER WILSON,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br><br>Filed: May 1, 2025 |

*Brian C. Duffy*, Duffy & Young, LLC, Charleston, SC, for Petitioner.

*Meghan Murphy*, U.S. Department of Justice, Washington, DC, for Respondent.

**RULING ON ENTITLEMENT**[1]

On April 22, 2020, Jennifer Wilson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that as a result of an influenza ("flu") vaccine she received on October 25, 2018, she suffered a shoulder injury related to vaccine administration ("SIRVA"), a Vaccine Table injury. Petition (ECF No. 1) at Preamble. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that Petitioner is entitled to compensation for her SIRVA.

---

[1] Because this ruling and decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means this Ruling/Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Relevant Procedural History

This claim was initiated on April 22, 2020, and relevant medical records were filed thereafter. ECF No. 18. On July 2, 2022, Respondent filed his Rule 4(c) Report, indicating that he was contesting entitlement because there was no vaccination record to corroborate Petitioner's claim of the receipt of a flu vaccination on October 25, 2018. Resp.'s Report at 7. (ECF No. 39). The parties thereafter briefed the matter: on April 21, 2023, Petitioner filed her Motion for Ruling on the Record (ECF No. 43); Respondent filed his response on August 16, 2023 (ECF No. 46); and Petitioner filed her reply on June 9, 2023 (ECF No. 47). This matter is now ripe for a ruling on entitlement.

## II. Evidence

### A. *Medical Records*

Petitioner alleges that she received the flu vaccine at issue on October 25, 2018, at the Charleston Area Convention and Visitors Bureau ("CACVB"), where she worked as an advertising sales manager. *See* Ex. 1 (Affidavit of Petitioner). Petitioner has stated that CACVB provided access to vaccinations on-site through the Carolina Center for Occupational Health ("CCOH"). *Id.*

To prove receipt of the vaccine, Petitioner points to a number of items of circumstantial evidence. For example, Petitioner submitted an e-mail from the CCOH clinic manager, Ms. Sonya Rogers, to Amy Hutto at CACVB with the subject line noting "Flu shots from this morning" that listed the names of employees at petitioner's work site. *See* Ex. 2. The email stated, "here is my list from this morning, I will add all of them to it and resend them with the bill." *Id.* Petitioner also has submitted a list containing names of "CVB Staff" with check marks and highlighted names including her own. *Id.* at 4. Petitioner has not provided any further information documenting her October 25, 2018 vaccination, however, such as a vaccination record documenting the name of the vaccine, the site of administration, the vaccine administrator and lot number; a billing record or proof of payment for the vaccine; or insurance records documenting receipt of or payment for the vaccine.

Eighty-eight days later, on January 22, 2019, Petitioner had an initial physical therapy ("PT") evaluation for "right shoulder pain since October" with "no apparent injury." Ex. 5 at 31. Petitioner reported that she was continuing to do physical workouts with weights; she also reported having received a flu vaccine in October 2018. *Id.* On examination, Petitioner exhibited "active flexion to 140 degrees, abduction 90 degrees,

and external rotation to 20 degrees with pain;" petitioner's goal was to reduce her pain and improve abduction to 140 degrees and external rotation to 85 degrees. *Id.*

On February 13, 2019, Petitioner's physical therapist documented that she had "[right] neck pain and an MVA [motor vehicle accident]." Ex. 5 at 25. She had seen a chiropractor, although no details of that treatment were provided. The physical therapist assessment noted cervical range of motion ("ROM") limitations on petitioner's right side that were suggestive of degenerative cervical disc disease or joint disease for which traction had provided some relief. *Id.*

On March 13, 2019, an MRI of Petitioner's right shoulder showed mild subacromial and subdeltoid bursitis and mild AC joint degenerative changes. Ex. 3 at 108. The next day, she saw orthopedic surgeon Dr. John Graham, M.D., for continuing right shoulder pain and restricted motion. *Id.* at 305. Petitioner's recent MRI showed bursitis. *Id.* Petitioner's exam was positive for impingement signs, decreased ROM of the right shoulder, decreased strength secondary to pain, and tenderness over the proximal humerus. *Id.* The assessment was adhesive capsulitis. Dr. Graham opined that petitioner "appears to have adhesive capsulitis with an inflammatory response after a flu vaccine in October." *Id.* at 306. After discussing treatment options, Petitioner elected to proceed with arthroscopic surgery followed by PT. *Id.*

On March 26, 2019, Petitioner underwent right shoulder arthroscopic surgery by Dr. Graham. Ex. 3 at 24. The operative note documented extensive capsulitis with adhesions. *Id.* During the procedure, "[s]erial debridement with manipulation [was] successful in achieving full [ROM]." *Id.* The labrum, bursa and rotator cuff and biceps tendons were intact. *Id.* The day after her surgery, on March 27, 2019, Petitioner had her initial PT visit. Ex. 5 at 57.

On April 4, 2019, Petitioner saw Dr. Graham for post-operative follow-up care. Ex 3 at 144. Petitioner reported that she had improved ROM since her arthroscopic surgery and had been attending daily PT sessions and doing home exercises. *Id.*

By June 26, 2019, Petitioner had attended twenty-seven PT sessions post-operatively; she had "85-90%" of her normal motion and less pain and inflammation. Ex. 5 at 3. Almost a month later, on July 8, 2019, she went back to Dr. Graham for follow-up care. Ex. 3 at 140. Petitioner reported overall improvement with good response to therapy and injections, but residual discomfort with repetitive activity. *Id.*

On October 16, 2019, Petitioner saw Dr. Graham for follow-up care. She reported continued improvement with motion and strength, and also reported residual tenderness

and internal rotation restriction. Ex. 3 at 138. Dr. Graham's assessment continued to be adhesive capsulitis of her right shoulder after receipt of the flu vaccine; petitioner was to follow-up as needed. *Id.*

On December 19, 2019, Petitioner returned to Dr. Graham and reported a "persistent ache along the anterior aspect of the right shoulder since Thanksgiving." Ex. 3 at 156. Petitioner denied trauma and wanted to ensure that "nothing serious was going on" with her shoulder. *Id.* On examination, Petitioner had "active forward flexion to 170 degrees and abduction to 90." *Id.* Petitioner was diagnosed with adhesive capsulitis and biceps tendonitis of the right shoulder. *Id.* Dr. Graham recommended NSAIDs and formal PT, but Petitioner preferred home exercises. *Id.* at 157.

B.   *Witness Statements*

Petitioner has filed several witness statements to support her claim, including two affidavits from Petitioner herself, one affidavit from her husband, Brad Wilson, and declarations from three individuals, Amy Hutto, Anne McEwen, and Martha Ralston.

Ms. Wilson's first affidavit, executed on February 14, 2020, describes how on our about October 25, 2018, the Carolina Center for Occupational Health ("CCOH") came to her work at the Charleston Area Convention and Visitors Bureau ("CACVB") to administer flu shots, which they had done in prior years as well. Ex. 1 at 2. She explains that she began having shoulder pain almost immediately and that after 48 hours she noticed her pain had progressed and made daily life activities more difficult. *Id.* at 2-3. The pain gradually got worse into November and December, which lead to Ms. Wilson seeking PT starting in January 2019. *Id.* at 3. Ms. Wilson then describes how this did not help her symptoms and eventually it was determined that surgery would be necessary, after which she attended multiple sessions of PT. *Id.* Although PT and steroid injections helped her pain, she indicates that she still experiences mild pain and limited range of motion and does not expect her shoulder to return to her pre-vaccination level. *Id.* at 4.

Ms. Wilson's second affidavit, executed on April 20, 2023, describes how she did not have any right shoulder issues prior to her October 2018 vaccination, and that although she was involved in a minor motor accident in February of 2019, it did not result in any damage to her car and the only injury she suffered was some neck stiffness, which caused her to visit a chiropractor. Ex. 14 at 2. She avers that this accident did not cause her to have any new pain in her right shoulder, and that the PT she required from James Island Physical Therapy in 2019 was not for neck pain and was for shoulder pain. *Id.*

The third submitted affidavit is from Petitioner's husband, Mr. Brad Wilson, and was executed in April of 2023. Ex. 15. Mr. Wilson indicates that his wife gets a flu shot every year and after the one in October 2019, she came home complaining of pain in her right shoulder, which progressed over the next few days. *Id.* at 1. Mr. Wilson also indicates that his wife never had any issues with pain or range of motion in her right shoulder prior to receiving the vaccination, nor did she have any other conditions which might explain her symptoms. *Id.*

Petitioner has also submitted three witness declarations. The first is from Ms. Amy Hutto, who is a coworker of Petitioner at CACVB. Ex. 11. Ms. Hutto describes how CCOH had come to CACVB for several years to administer flu shots in the fall, and that she also received a flu shot on October 25, 2018. *Id.* at 2. She also indicated that as part of her job duties, she was required to collect records of CACVB employees who received a flu shot administered by CCOH on October 25, 2018, and included the list that she made, which includes her name as well as Ms. Wilson's. *Id.* Ms. Hutto was also able to locate old bills received from CCOH for flu shots administered in prior years to 2018, and that those records indicate Petitioner received a flu shot in those years. *Id.* at 3. Finally, Ms. Hutto indicates that she requested a copy of her vaccine records from the South Carolina Department of Health and Environmental Control ("DHEC") and that upon receiving the records, there was no record of flu vaccinations administered by CCOH in 2015, 2016, or 2018 even though Ms. Hutto avers she received one on each of those years. *Id.* at 3-4.

The second declaration is from Ms. Annie McEwen, also a coworker of Petitioner at CACVB. Ex. 12. Ms. McEwen also states that she had received flu shots with Petitioner for years and that she also received a flu shot at the same time as Petitioner on October 25, 2018. *Id.* at 2. She notes that she remembers Petitioner complaining about having pain in her right shoulder either the day they received their flu shots or the following day at work. *Id.* Finally, Ms. McEwen indicates that she requested and received vaccine records from DHEC and that there was no record of the vaccination received on October 25, 2018. *Id.*

The final declaration is from Ms. Martha Ralson, a third coworker of Petitioner at CACVB. Ex. 13. Ms. Ralston indicated that she knew Petitioner had received a vaccination for several years prior to 2018, that she received the flu vaccine on October 25, 2018, the same day as Petitioner, and that she requested her vaccine records from DHEC and that upon receiving them, there was no record of the vaccination she received on October 25, 2018. *Id.* at 1-2.

5

### III. Parties' Respective Arguments

Petitioner argues that her medical records, affidavits, and witness declarations support her claim that she received a vaccination on or about October 25, 2018. Respondent argues that Petitioner's claim must fail because she has not established by preponderant evidence that she received a flu vaccination on October 25, 2018. Resp. at 7. Respondent also avers that the list of names of people receiving the flu vaccination on October 25, 2018, "is insufficient to establish receipt of the vaccine, as it appears to be nothing more than a list of possible attendees at a vaccine clinic. It is not confirmation of her attendance nor proof of receipt of a flu vaccination and should be given no weight." *Id.*

### IV. Applicable Law

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that

6

happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## V. Analysis

### I. Legal Standard for Proof of Vaccination

Under the Vaccine Act, providing proof of vaccination is a threshold matter in order to prevail under either a "Table" injury in which causation is presumed, or an "off-Table" injury, in which petitioner identifies a causal link between the vaccine and the alleged injury. § 300aa–11(c)(1)(A) and (B). Petitioner must first prove by a preponderance of the evidence that he "received a vaccine set forth in the Vaccine Injury Table." § 300aa-11(c)(1)(A). A special master shall assess "the record as a whole" and may not "find that a petitioner received a vaccine 'based on the claims of a petitioner alone, unsubstantiated

7

by medical records or by medical opinion.' " *Rich v. Sec'y of Health & Human Servs.*, No. 12–742V, 2013 WL 4476751 (Fed. Cl. Spec. Mstr. July 26, 2013) (§ 300aa–13(a)(1)).

Although contemporaneous documentation of vaccination from a healthcare provider is the best evidence to prove administration of a vaccine, it is not absolutely required in all cases. *Centmehaiey v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 612, 621 (1995) ("[t]he lack of contemporaneous documentary proof of a vaccination ... does not necessarily bar recovery"). Indeed, as Vaccine Rule 2 states, "[i]f the required medical records are not submitted, the petitioner must include an affidavit detailing the efforts made to obtain such records and the reasons for their unavailability." Vaccine Rule 2(c)(2)(B)(i). Furthermore, if a petitioner's claim is "based in any part on the observations or testimony of any person, the petitioner should include the substance of each person's proposed testimony in a detailed affidavit(s) supporting all elements of the allegations made in the petition." Vaccine Rule 2(c)(2)(B)(ii).

Special masters have thus found that vaccine administration occurred even in the absence of direct documentation. In such cases, preponderant evidence was provided in the form of other medical records and/or witness testimony. For example, corroborative, though backward-looking, medical notations have been found to tip the evidentiary scale in favor of vaccine receipt. *Lamberti v. Sec'y of Health & Human Servs.*, No. 99–507V, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May 31, 2007) (finding multiple medical record references to vaccine receipt constituted adequate evidence of administration); *Groht v. Sec'y of Health & Human Servs.*, No. 00–287V, 2006 WL 3342222, at *2 (Fed. Cl. Spec. Mstr. Oct. 30, 2006) (finding a treating physician's note—"4/30/97—Hep B. inj. # 1 (not given here) (pt. wanted this to be charted)"—to be sufficient proof of vaccination); *Figueroa v. Sec'y of Health & Human Servs.*, No. 10-705V, 2014 WL 6819494, at *4 (Fed. Cl. Spec. Mstr. Nov. 7, 2014) (finding sufficient proof of vaccination where subsequent medical records documented that petitioner consistently reported receiving the subject flu vaccination); *Beckner v. Sec'y of Health & Human Servs.*, No. 11-668V, 2013 WL 3353993, at *8 (Fed. Cl. Spec. Mstr. Apr. 25, 2013) (finding sufficient proof of vaccination where a medical record created approximately a month after petitioner's alleged receipt of the subject vaccine documented petitioner's report of his vaccination and the statement was made "for the purpose of facilitating diagnosis and treatment of his condition...[and] the vaccination was received in such close temporal proximity to petitioner's admission that misremembering is unlikely"). *But see Matthews v. Sec'y of Health & Hum. Servs.*, No. 19-414V, 2021 WL 4190265 (Fed. Cl. Spec. Mstr. Aug. 19, 2021), *aff'd*, 157 Fed. Cl. 777 (2021) (finding insufficient proof of vaccination where petitioner's numerous contemporaneous medical records, petition, and subsequent filings were inconsistent in reporting whether he received a flu vaccine that season and identifying the time at which he allegedly received the vaccine).

In addition to corroborative medical records, witness testimony can also help establish a sufficient basis for a finding that a vaccine was administered as alleged. *Alger v. Sec'y of Health & Human Servs.*, No. 89–31V, 1990 WL 293408, at *2, 7 (Fed. Cl. Spec. Mstr. Mar. 14, 1990) (oral testimony from a parent and the doctor who administered the vaccine was "more than adequate to support a finding that the vaccine was administered"). The Court of Federal Claims has recognized the existence of precedent supporting the proposition that a court may base a finding of vaccination on lay testimony. *Epstein v. Sec'y of Health & Human Servs.*, 35 Fed. Cl. 467, 478 (Fed. Cl. 1996); *see also Brown v. Sec'y of Health & Human Servs.*, 18 Cl. Ct. 834, 839–40 (1989) (proof of vaccination in the absence of contemporaneous medical records established via testimony of petitioner's parent, her personal calendar, and evidence of a charge for the vaccine on the physician's billing statement), *rev'd on other grounds*, 920 F.2d 918 (Fed.Cir.1990); *Gambo v. Sec'y of Health & Human Servs.*, No. 13-691V, 2014 WL 7739572, at *3 (Fed. Cl. Dec. 18, 2014).

## II.   Factual Findings on Proof of Vaccination

Upon review of the record as it stands, I find that Petitioner has offered preponderant evidence that she received an influenza vaccine on October 25, 2018. Petitioner went through great lengths in order to acquire her vaccination record, requiring subpoenas from both CCOH, the entity which was on-site at Petitioner's employer to administer seasonal flu vaccines, and Concentra, an entity which acquired CCOH in June of 2019. Both of these entities denied having any records. Moreover, Petitioner has submitted affidavits from three co-workers, all of whom indicate that they knew Petitioner to receive a seasonal flu vaccination, that they also received flu vaccinations on October 25, 2018, and that they requested their medical records for that flu vaccination and were told that no records existed of the event. One of these co-workers, who indicated that as part of her job she was required to collect the names of everyone who received a vaccination on October 25, 2018, provided a copy of the e-mail she sent to a CCOH employee containing a document with the list of CACVB employees who received the vaccination that day, which included Petitioner and herself. Ex. 11.

The reasonable inference from all of this is that the vaccinations likely occurred - but CCOH, Concentra, or both failed to exert the proper care to make sure these medical records remained accessible. And other medical records are consistent for Petitioner mentioning the start of her shoulder pain being a flu vaccination in October 2018. Accordingly, the record as it stands provides preponderant evidence to support Petitioner's claim that she received a flu vaccine on October 25, 2018.

### III.    Fact Findings – Onset and Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation, or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

10

aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381 at 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 at 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony

11

surrounding the events in question that was given at a later date, provided that such determination is rational).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the Qualifications and Aids to Interpretation ("QAI") requirements for a Table SIRVA. I note that Respondent has not offered *any* argument concerning whether he believes Petitioner has failed to satisfy these QAI requirements.

#### 1. Petitioner has no Prior Right Shoulder Condition or Injury

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). In this case, the medical records do not indicate that Petitioner suffered any prior right shoulder pain issues and Respondent does not contend that Petitioner has failed to carry her burden with respect to this requirement. Accordingly, the record allows me to find that Petitioner had no prior right shoulder condition or injury.

#### 2. Pain Occurs with the Specified Timeframe (Onset)

A SIRVA claimant must show that she experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that her pain occurred within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)). Once again, Respondent has not offered argument that Petitioner has failed to prove onset by preponderant evidence and the records are consistent in Petitioner attributing the start of her shoulder pain to the vaccination she received on October 25, 2018. Accordingly, I find the second QAI requirement has been met.

#### 3. Petitioner's Pain and Limited Range of Motion was Limited to her Right Shoulder

The specific language of a SIRVA injury contained in the QAI of the Vaccine Injury Table is that "pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii) (QAI criteria)). It does not appear that Respondent is contesting this criterion and there is nothing in the submitted record to indicate that Petitioner's symptoms were not limited to her right shoulder. Petitioner has consistently complained of right shoulder pain and loss of ROM,

and she eventually required arthroscopic shoulder surgery in her right shoulder. I therefore find Petitioner has satisfied the third QAI requirement.

### 4. There is No Evidence of Another Condition or Abnormality

The last criterion for a Table SIRVA states that there must be no other condition or abnormality which would explain Petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Once again, there is no evidence in the record to suggest that another condition or abnormality could be the cause of Petitioner's right shoulder injury and Respondent does not offer any argument to the contrary. Accordingly, Petitioner has satisfied the fourth QAI requirement.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). The overall record contains preponderant evidence to fulfill these additional requirements.

I have already determined that the record preponderates a finding that Petitioner received the flu vaccine on October 25, 2018. There is no evidence that Petitioner has collected a civil award for her injury. Petition at 4; Section 11(c)(1)(E) (lack of prior civil award).

As stated above, I have found that the onset of Petitioner's right shoulder pain occurred within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). This finding also satisfies the requirement that Petitioner's first symptom or manifestation of onset occur within the time frame listed on the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the influenza vaccine). I have also found that Petitioner's pain and reduced range of motion was limited to her right shoulder. 42 C.F.R. § 100.3(c)(10). Finally, I find that there was no condition or abnormality that would explain Petitioner's symptoms after vaccination. *Id*. Therefore, Petitioner has satisfied all requirements for a Table SIRVA.

The last criteria which must be satisfied by Petitioner involves the duration of her SIRVA. For compensation to be awarded, the Vaccine Act requires that a petitioner suffer the residual effects of his or her right shoulder injury for more than six months or required surgical intervention. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Starting from September 21, 2019 (48 hours after vaccination), the records undoubtedly demonstrate that Petitioner suffered the residual effects of her shoulder injury for more than six months. *See, e.g.*, Ex. 3 at 138 (record from October 16, 2019, when Petitioner

13

reported residual tenderness and internal rotation restriction following her surgery, with Dr. Graham's assessment being adhesive capsulitis of her right shoulder after receipt of the flu vaccine). Thus, this requirement is also met.

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## VI.   Conclusion

**In view of the evidence of record, I find Petitioner is entitled to compensation. The issuance of a damages order will follow the filing of this Decision.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master